UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 18-2706(DSD/TNL)

Jeffrey Metzger,

      Plaintiff,

v.                                                ORDER

Seterus, Inc. and Federal National
Mortgage Association,

      Defendants.

    Jonathan L. R. Drewes, Esq. and Drewes Law, PLLC, 10 NE Second Street, Suite 205, Minneapolis, MN 55413, counsel for plaintiff.

    David R. Mortensen, Esq. and Kretsch Law Office, PLLC, 17850 Kenwood Trail, Second Floor, Lakeville, MN 55044 and Melissa L.B. Porter, Esq. and Shapiro & Zielke, LLP, 12550 West Frontage Road, Suite 200, Burnsville, MN 55337, counsel for defendants.

    This matter is before the court upon the motion for summary judgment by defendants Seterus, Inc. and Federal National Mortgage Association (Fannie Mae).  Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

    This debt-collection dispute arises out of plaintiff Jeffrey Metzger's delinquent mortgage payments.  On September 13, 2005,

Metzger and his wife executed a promissory note and gave a mortgage of real property located in Mound, Minnesota to Mortgage Electronic Registration Systems, Inc. (MERS).[1]  Fannie May owned the loan.

On October 1, 2014, Seterus became the loan servicer on the mortgage on behalf of Fannie Mae.  At that time, Metzger was current on his mortgage payments, but he owed $54.86 in late fees. Porter Decl. Ex. 2, at 82.  Metzger alleges that a collections agent from Seterus contacted him by phone in early October 2014 to set up a payment plan for the late fee and for the October mortgage payment, which was not yet delinquent.[2]  Metzger Aff. ¶ 11. Seterus's records show that its collections department contacted Metzger on October 8 and that Metzger committed to paying $1,613.27 on October 10, which included the October payment of $1,558.41 plus the $54.86 late fee. Porter Decl. Ex. 2, at 87.  Seterus's corporate representative testified that Seterus typically calls borrowers to introduce itself as the new loan servicer and to provide other information about its processes and the borrower's account.  Del Rio Dep. 154:12-56:17. If the account is past due,

---

[1]  Metzger's wife passed away in 2013.  Metzger Aff. ¶ 6.

[2]  Metzger's mortgage payments were due on the first of the month, but he had a fifteen-day grace period in which to submit payment.  Del Rio Dep. 154:7-11; Metzger Aff. Ex. A § 6(A).

2

Seterus may advise the borrower of that fact and request payment. Id. 155:15-22. And if the phone call is made during the fifteen-day grace period, Seterus may remind the borrower that the payment is coming due. Id. 155:23-56:11. It appears that Metzger made the payment as promised and remained current on his loan until April 2017. Porter Decl. Ex. 2, at 70.

On January 4, 2018, Seterus sent Metzger a monthly mortgage statement indicating that he owed a total of $17,022.52 ($16,216.94 in past due payments and $805.58 in charges) and stating that he could either reinstate the loan by paying that amount in full or be subject to foreclosure. Porter Decl. Ex. 1, at 13. The statement advised that the total amount due "may increase due to future installments that become due and/or fees that may be assessed." Id. Metzger received the statement on or about January 11, 2018. Metzger Aff. ¶ 18. Metzger did not make payment after receiving the statement.

On January 22, 2018, Seterus sent Metzger a letter explaining that he could reinstate the loan by paying $17,037.52 by January 24. Porter Decl. Ex. 2, at 68. The letter detailed the overdue principal and interest payments, escrow advances, tax and insurance payments, late charges, legal fees, and property

3

inspection costs.[3]  Id. at 70-80.  Metzger did not remit any payment after receiving this letter.

On February 8, 2018, Seterus served Metzger with a document called Help for Homeowners in Foreclosure (HFH notice), which stated the following:

> AS OF January 25, 2018, this lender says that you owe $16,381.52 to bring your mortgage up to date (or 'reinstate' your mortgage). You must pay this amount plus interest and other costs, to keep your house from going through a sheriff's sale.  BEFORE SENDING ANY PAYMENT, please call Seterus at (866) 570-5277 to obtain the most current reinstatement amount.

Porter Decl. Ex. 1, at 23.  The HFH notice also provided information to assist Metzger in contacting foreclosure prevention counselors. Id.

On February 12, 2018, Metzger received another monthly mortgage statement from Seterus dated February 5, 2018, stating that he owed $18,668.45.  Id. at 17; Metzger Aff. ¶ 20.  The statement advised Metzger that he was 310 days delinquent on his loan and that the failure to bring his loan current could result in foreclosure.  Porter Decl. Ex. 1, at 19.

---

[3]  Specifically, as of January 22, 2018, Metzger owed $10,971.20 in principal and interest; $5,245.74 in escrow advances; $164.58 in late fees; $105 in property inspection fees; and $551 in legal fees.  Id.

4

According to Metzger, he was ready, willing, and able to pay off the loan but was confused as to the amount he owed given the differing amounts stated in the various statements he received. Metzger Aff. ¶¶ 20, 25. Metzger indicates that he contacted Seterus to determine the amount he owed, but he does not say when he did so, nor does he provide the content of any such communications. See Metzger Aff. ¶ 23. He simply states that Seterus provided him with "erroneous" amounts. Id.

A sheriff's sale was held on March 19, 2018, and Fannie Mae purchased the home. Minnesota law allows a mortgagor the opportunity to redeem the property following foreclosure by paying the amount in arrears plus interest within six months of the sale. See Minn. Stat. § 580.23, subdiv. 1. Rather than do so, Metzger instead commenced this action on the last day of the redemption period, September 19, 2018. He alleges that Seterus violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, and that Fannie Mae violated Minnesota's Foreclosure by Advertisement Statute, Minn. Stat. § 580.041, subdiv. 2. Defendants now move for summary judgment.

5

**DISCUSSION**

**I.   Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all

6

other facts immaterial.  Celotex, 477 U.S. at 322-23.

**II. FDCPA**

Congress enacted the FDCPA to protect consumers "in response to abusive, deceptive, and unfair debt collection practices." Schmitt v. FMA Alliance, Ltd., 398 F.3d 995, 997 (8th Cir. 2005). "A violation of the FDCPA is reviewed utilizing the unsophisticated-consumer standard which ... protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection [attempts]." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317-18 (8th Cir. 2004) (citations and internal quotation marks omitted). "The unsophisticated consumer test is a practical one, and statements that are merely susceptible of an ingenious misreading do not violate the FDCPA."  Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1056 (8th Cir. 2002) (citations and internal quotation marks omitted).

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  This prohibition specifically precludes the "false representation" of the amount of any debt.  Id. § 1692e(2)(A).

7

Metzger alleges that Seterus violated the FDCPA by misrepresenting the outstanding loan amounts on various statements to him between January and February 2018. Seterus argues that it is entitled to summary judgment on this claim, first, because it was not a debt collector within the meaning of the FDCPA when it began servicing the loan and, second, because the statements accurately stated the amount Metzger owed when they were mailed.

**A.   Debt Collector**

The FDCPA defines a "debt collector" as "any person who ... regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due ... to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). As a result, "a mortgage servicing company" is not a debt collector "as long as the debt was not in default at the time it was assigned." Motley v. Homecomings Fin., LLC, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008) (quotation omitted).

It is undisputed that Metzger was current on his loan obligation when Seterus began servicing the loan, but that he owed an outstanding late fee of $54.86 at that time. According to

8

Metzger, the outstanding late fee constituted default on the loan. Seterus responds that although the late fee was due when it assumed the role of loan servicer, the loan itself was not in default because Metzger was current with his monthly payments at that time. The court agrees with Seterus.

The underlying promissory note explains that "default" occurs when the noteholder fails to "pay the full amount of each monthly payment on the date it is due."  Metzger Aff. Ex. A § 6(B).  Under the note, "monthly payment" includes the payment of principal and interest on the loan.  Id. §§ 1-3.  Late charges are deemed separate and distinct from "monthly payments."  See id. § 6(A) ("If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder.").  In other words, under the plain terms of the note, owing a "late charge" is not the same as being in "default" on the loan.  As a result, because Metzger was current on his monthly payments when Seterus began servicing the loan, he was not in default, and Seterus therefore was not a debt collector under the FDCPA.[4]

---

[4] Seterus's phone calls with Metzger in early October 2014 do not establish that Seterus considered Metzger to be in default at that time.  See Del Rio Dep. 154:12-56:17.

**B.   False Representations**

Even if Seterus was a debt collector, Metzger's FDCPA claim fails because the record does not support a finding that Seterus falsely represented the amount of the debt.

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  This prohibition specifically precludes the "false representation" of the amount of any debt.  Id. § 1692e(2)(A).

According to Metzger, Seterus falsely represented the debt amount by listing different amounts on statements dated January 4, 2018, January 22, 2018, February 5, 2018, and February 8, 2018. A review of the statements reveals, however, that the amounts stated were accurate and differed because the amount due increased with the passage of time.

The January 4 statement advised Metzger that he owed a total of $17,022.52 ($16,216.94 in past due payments and $805.58 in charges).  The January 22 statement indicated that he owed $17,037.52.  The amount increased because Seterus incurred a $15 property inspection fee on January 16, 2018.  See Porter Decl. Ex. 2, at 58.

The February 8 HFH notice stated that "as of January 25, 2018," Metzger owed $16,381.52 "plus interest and other costs" to bring his mortgage up to date.[5]  Porter Decl. Ex. 1, at 23.  As Seterus has explained, the $16,381.52 amount accurately reflects the outstanding loan amount but does not include other costs as did the January 22 statement.  If you add those costs ($656) to the outstanding loan amount, the total amount owed was $17,037.52, which matches the amount stated in the January 22 statement.  See Porter Decl. Ex. 2, at 58.

On February 12, 2018, Metzger received another statement dated February 5, 2018, stating that he owed $18,668.45 on the loan.  Porter Decl. Ex. 1, at 17.  That amount reflected the previous unpaid amount of $17,037.52 plus the February monthly payment of $1,630.93.  Id. at 17, 19.

Although the total amounts in the statements did vary over time, each statement accurately stated the amount Metzger owed as of the date of each statement.  As a result, Metzger's claim that Seterus falsely represented the amounts due does not withstand

---

[5] As discussed below, Minnesota law provides a template for HFH notices with which the lender must substantially comply.  The template does not require the lender to specifically identify all accrued interest and costs and instead urges debtors to contact the lender.  See Minn. Stat. § 580.041.

11

scrutiny. Seterus is entitled to summary judgment on the FDCPA claim.

**III. HFH Notice**

Metzger argues that Fannie Mae violated Minn. Stat. § 580.041, subdiv. 2, by inaccurately stating the amount he needed to pay to reinstate the loan on the HFH notice. His argument centers on the fact that the HFH notice did not provide the total amount he owed when he received the notice. But the law did not require the notice to contain that information.

Minnesota law requires lenders to substantially comply with the template set forth in § 580.041, subdiv. 2 when providing a foreclosure advice notice. See McGraw v. Fed. Nat'l Mortg. Ass'n, No. 14-cv-142, 2015 WL 4488399, at *5 (D. Minn. July 23, 2015) ("[B]anks must strictly comply with § 580.041, subd. 2, but ... to strictly comply with § 580.041, subd. 2, a bank must merely provide a foreclosure-advice notice that 'substantially' resembles the statutory exemplar.").

The record establishes that Fannie Mae met this standard. The HFH notice at issue followed the template set forth in the statute and did not misrepresent the amount due. As noted above, the notice accurately stated that "as of January 25, 2018," Metzger owed $16,381.52 "plus interest and other costs" to bring his

mortgage up to date.  Porter Decl. Ex. 1, at 23.  That language matched the template exactly.  See Minn. Stat. § 580.041, subdiv. 2.  The statutory template allows lenders to insert the catchall language "plus interest and other costs" in lieu of specifying the amount of interest and other costs.  Id.  The notice then advised Metzger to "please call Seterus at (866) 570-5277 to obtain the most current reinstatement amount" before sending payment.  Porter Decl. Ex. 1, at 23.  Had Metzger done so, he could have learned the exact amount he owed and remitted payment.[6]  His failure to do so was not based on any misrepresentation in the HFH notice.

Metzger relies heavily on McGraw for the proposition that any discrepancy between the amount stated on the HFH notice and the amount due when the notice is received violates the statute.  See McGraw, 2015 WL 4488399, at *5.  McGraw held that the lender violated Minn. Stat. § 580.041, subdiv. 2, because the December 12, 2012, HFH notice told the homeowner what she owed as of January 9, 2012 – eleven months earlier.  Id.  The court explained that

---

[6] Metzger asserts that he contacted Seterus to determine the amount he owed, but that "every time" he did so Seterus provided "erroneous" numbers.  Metzger Aff. ¶ 23.  The record is devoid of any details as to when Metzger contacted Seterus and what information Seterus gave him.  Metzger's "bald assertions are insufficient to create a genuine issue of material fact."  Fischer v. Minneapolis Pub. Sch., 16 F. Supp. 3d 1012, 1017 (D. Minn. 2014).

under those circumstances, the notice failed the statutory purpose of informing the homeowner how much she must pay to bring her mortgage up to date and keep her house from foreclosure.  Id.

Here, there was no such substantial delay in providing the notice to Metzger.  The notice explained the amount due "as of January 25, 2018," and Metzger was served with the notice on February 8, 2018.  The notice further advised Metzger that he also owed "interest and other costs" and to contact Seterus to "obtain the most current reinstatement amount."  Porter Decl. Ex. 1, at 23.  Given the reasonable lag time between when the notice was drafted and served on Metzger, McGraw is factually inapposite. Fannie Mae is entitled to summary judgment on this claim.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment [ECF No. 36] is granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 13, 2020

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court